IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| MICHEAL W. GRAGG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 10-3313 |
| | ) | |
| PARK RIDGE MOBILE HOME | ) | |
| COURT LLP, and BRENDEN | ) | |
| POTTS, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

This cause is before the Court on <u>pro se</u> Plaintiff Micheal W.

Gragg's Motion for Summary Judgment (d/e 15) and the Motion to

Dismiss (d/e 16) filed by Defendants Park Ridge Mobile Home Court

LLP and Brenden Potts. For the reasons that follow, the Motions are

DENIED.

## I. FACTS

Defendant Potts is the co-owner of Park Ridge Mobile Home Court

in Springfield, Illinois. On or about September 1, 2010, Plaintiff and

Park Ridge Mobile Home Court's manager, Joe Graves, entered into a lease agreement to rent a space at lot 30 of Park Ridge Mobile Home Court. Plaintiff, his wife, Tracy Gragg, and their two dogs, moved their mobile home onto lot 30.

A.   <u>Federal Court Proceedings</u>

On November 30, 2010, Plaintiff filed a Complaint purportedly pursuant to the Americans with Disabilities Act of 1990 (42 U.S.C. § 12101 <u>et</u> <u>seq.</u>) (ADA). The Complaint alleged that Plaintiff lived in a trailer located on property owned by Defendants. Plaintiff stated he was in the process of training a guide dog that lived with him. According to Plaintiff, Defendant Potts told Plaintiff he must get rid of the dog. Plaintiff further alleged the property was in disrepair– specifically that a "very bad sewer smell" was coming from the pipes. Plaintiff alleged Defendants served upon him a 5-day eviction notice and threatened Plaintiff with a 30-day eviction notice.

On December 6, 2010, the Court interpreted Plaintiff's Complaint as alleging that he was being discriminated against (with respect to both

the attempted eviction and repairs) and harassed because of the guide dog. The Court further noted that although Plaintiff cited the ADA, it appeared he was instead making a claim pursuant to the Fair Housing Amendments Act of 1988 (42 U.S.C. § 3601, et seq.) (FHAA). The Court found, however, that Plaintiff failed to allege he was disabled or that the guide-dog-in-training was being used by Plaintiff as an aid. Therefore, the Court granted Plaintiff leave to file an amended complaint "that would specify the disability or handicap that he is living with."

On December 13, 2010, Plaintiff filed an Amended Complaint. Plaintiff alleged he suffered from glaucoma, was blind in his left eye, and suffered from night blindness. Plaintiff alleged Defendant Potts was aware Plaintiff was visually impaired.

Plaintiff also provided additional facts in his Amended Complaint. According to Plaintiff, on October 15, 2010, Defendant Potts approached Plaintiff and asked him how many dogs he had. Plaintiff told Defendant Potts he had the two small dogs that Defendant Potts knew about and the service dog. Defendant Potts told Plaintiff "that dog needs to go."

On November 2, 2010, Defendant Potts asked Plaintiff for the lot rent.

Plaintiff told Defendant Potts he had part of it.  Plaintiff also complained

to Defendant Potts about the sewer leak in the pipes, to which

Defendant Potts responded, "if people would pay my lot rent I could do

things."

On November 19, 2010, Defendant Potts again asked Plaintiff

about the lot rent, which totaled $200.  Tracy, Plaintiff's wife, asked

Defendant Potts about the sewer smell.  Defendant Potts then "started

back on the dog" and "threatened [Plaintiff] in a hostile manner."

Defendant Potts told Plaintiff he was going to evict Plaintiff not for the

back rent but for the dog.

Defendant Potts had someone serve Tracy with a 5-day eviction.

notice    Plaintiff alleged that after he paid the rent, management went to

the trailer telling them to sign a piece of paper saying they violated park

rules because of the guide dog.  Plaintiff and his wife refused to sign it.

Thereafter, Defendant Potts "put in a 30[-]day notice to evict [Plaintiff

and Tracy]."

Plaintiff further alleged that Defendant Potts had people stalking Plaintiff and Tracy and entering their trailer when they were not home. Plaintiff alleged that Defendant Potts turned off the gas and water to Plaintiff's home. Plaintiff also alleged Defendant Potts tried to hit Plaintiff and Plaintiff's friends, Stewart Alexander and Susan Martin, with Defendant Potts' truck. Plaintiff sought $27,000 and a written apology.

B.    State Court Proceedings

On December 9, 2010, R and R Real Estate Services, LLC[1], filed a Forcible Entry and Detainer action against Plaintiff and Tracy. On December 13, 2010, the Graggs filed a counterclaim. In their counterclaim, the Graggs asserted that "the reason why Park Ridge is [d]oing all this" was because Defendant Potts wanted the Graggs to sign a document stating they broke park rules but the Graggs refused. The Graggs asserted they did not break park rules because the dog was being

---

[1] The record is unclear regarding the relationship, if any, between R and R Real Estate Services, LLC and Defendants Potts and Park Ridge Mobile Home Court LLC. This Court asked Defendants for supplemental briefing and gave Plaintiff the opportunity to respond. As will be discussed further below, the issue remains unclear.

trained as a guide dog.  The Graggs also complained about (1) Defendant

Potts harassing them and (2) the bad sewer leak Defendant Potts refused

to fix.  According to Defendants, Plaintiff filed the federal court

Amended Complaint in the state court proceedings.

## II.  JURISDICTION AND VENUE

This Court has subject matter jurisdiction because Plaintiff's claims

are based on federal law.  <u>See</u> 28 U.S.C. § 1331 ("The district courts shall

have original jurisdiction of all civil actions arising under the

Constitution, laws, or treaties of the United States").  Venue is proper

because the events giving rise to the claim occurred in Sangamon County,

Illinois.  <u>See</u> 28 U.S.C. § 1391(b) (a civil action where jurisdiction is not

founded solely on diversity of citizenship may be brought in a judicial

district where a substantial part of the events or omissions giving rise to

the claim occurred).

## III.  ANALYSIS

Plaintiff has filed a Motion for Summary Judgment asserting the

undisputed facts demonstrate Defendants discriminated against him in

violation of the ADA. Defendants have filed a Motion to Dismiss asserting Plaintiff's claims–which Defendants construe as claims under the FHAA–are barred by (1) the <u>Rooker-Feldman</u> doctrine, (2) <u>res judicata</u>, and (3) the doctrine of unclean hands.

Because the parties dispute the nature of Plaintiff's claims, the Court must first determine whether Plaintiff is bringing a claim under the ADA or the FHAA. The Court will then address Defendants' Motion to Dismiss before turning to Plaintiff's Motion for Summary Judgment.

A.  <u>Nature of Plaintiff's Claims</u>

As evidenced by Plaintiff's Motion for Summary Judgment, Plaintiff is asserting an ADA claim. Plaintiff does not identify what portion of the ADA was allegedly violated.

"The ADA contains five titles: Employment (Title I); Public Services (Title II); Public Accommodations and Services Operated by Private Entities (Title III); Telecommunications (Title IV); and Miscellaneous Provisions (Title V)." <u>Maxwell v. South Bend Work Release Center</u>, ___ F.Supp.2d ___, ___, 2011 WL 1402883, at *4 (N.D.

Ill. 2011), citing the ADA, Pub.L.No. 101-336, 104 Stat. 327 (1990).

Titles I and IV are clearly inapplicable. Plaintiff is not alleging discrimination in employment or telecommunications.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity or be subject to discrimination by any such entity." 42 U.S.C. § 12132. The record contains no evidence suggesting Defendants are a public entity. See 42 U.S.C. § 12131(1) (defining public entity as any State or local government, any department, agency, special purpose district, or other instrumentality of a State or local government, the National Railroad Passenger Corporation, and any commuter authority). Therefore, Plaintiff does not state a claim under Title II of the ADA.

Title III of the ADA prohibits discrimination by "any person who owns, leases (or leases to) or operates a place of public accommodation." 42 U.S.C. § 12182. The ADA provides that certain private entities are

considered public accommodations:

(A) an inn, hotel, motel, or other place of lodging, except for an establishment located within a building that contains not more than five rooms for rent or hire and that is actually occupied by the proprietor of such establishment as the residence of such proprietor;

(B) a restaurant, bar, or other establishment serving food or drink;

(C) a motion picture house, theater, concert hall, stadium, or other place of exhibition or entertainment;

(D) an auditorium, convention center, lecture hall, or other place of public gathering;

(E) a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment;

(F) a laundromat, dry-cleaner, bank, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, pharmacy, insurance office, professional office of a health care provider, hospital, or other service establishment;

(G) a terminal, depot, or other station used for specified public transportation;

(H) a museum, library, gallery, or other place of public display or collection;

(I) a park, zoo, amusement park, or other place of recreation;

(J) a nursery, elementary, secondary, undergraduate, or postgraduate private school, or other place of education;

(K) a day care center, senior citizen center, homeless shelter, food bank, adoption agency, or other social service center establishment; and

(L) a gymnasium, health spa, bowling alley, golf course, or other place of exercise or recreation.

42 U.S.C. § 12181(7).

Courts have found that residential facilities–such as apartments and condominiums–do not fall within the definition of public accommodation.  See, e.g., Radivojevic v. Granville Terrace Mutual Ownership Trust, 2001 WL 123796, at *3 (N.D. Ill. 2001) ("apartments and condominiums are not places of public accommodations" under the ADA).  The mobile home lot rental at issue here is more akin to a residential facility than any of the specific entities described in

§12181(7).  <u>See</u>, <u>e.g.</u>, <u>Elliott v. Sherwood Manor Mobile Home Park</u>, 947 F.Supp. 1574, 1577 (M.D. Fla. 1996) (finding mobile home park did not fall within any of the categories covered by the ADA).  Therefore, Plaintiff has not stated a claim under Title III of the ADA.

Title V generally prohibits retaliation against a person seeking to exercise ADA rights or interference, coercion, or intimidation on account of exercising any right granted or protected by the ADA.  42 U.S.C. 12203.  Because Plaintiff has not alleged he exercised any right granted or protected by the ADA, he does not state a claim under Title V of the ADA.

This does not, however, end the analysis.  A complaint need not "specify the correct legal theory nor point to the correct statute." <u>Ford v. Davis</u>, 878 F.Supp. 1124, 1126 (N.D. Ill. 1995).  When reviewing the Complaint in December 2010, the Court noted that Plaintiff appeared to have stated a claim pursuant to the FHAA.  Defendants have proceeded under such belief.

As is relevant to Plaintiff's claims, § 3604 of the FHAA makes it

unlawful to: (1) discriminate in the rental of a dwelling because of handicap of that renter; and (2) discriminate against any person in the "terms, conditions, or privileges" of the "rental of a dwelling, or in the provision of services or facilities in connection with such dwelling because of a handicap of that person." 42 U.S.C. § 3604(f)(1)(A); 42 U.S.C. § 3604(f)(2). For purposes of § 3604, the FHAA defines "discrimination" to include "a refusal to make reasonable accommodations in rules, policies, practices, or services when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B); <u>see</u> <u>also</u>, <u>e.g.</u>, <u>Bronk v. Ineichen</u>, 54 F.3d 425, 429 (7th Cir. 1995) (stating that "a deaf individual's need for the accommodation afforded by a hearing dog is . . . <u>per</u> <u>se</u> reasonable within the meaning of the statute" but noting that the dog's skill level was contested).

In addition, § 3617 of the FHAA provides it is unlawful to coerce, intimidate, or retaliate against someone for having exercised rights protected by the FHAA. 42 U.S.C. § 3617. To prevail on a § 3617

claim, a plaintiff must show that: (1) he is a protected individual under the FHAA; (2) he was engaged in the exercise or enjoyment of his fair housing rights, or was aiding or encouraging others in the exercise of their rights; (3) the defendants were motivated in part by an intent to discriminate, or their conduct produced a disparate impact; and (4) the defendants coerced, threatened, intimidated, or interfered with plaintiff on account of his protected activity under the FHAA.  Grubbs v. Housing Authority of Joliet, 1997 WL 281297, at *25 (N.D. Ill. 1997); see also Tesemma v. Evans, 2011 WL 3418227, at *4 (D. Minn. 2011) (noting that to establish a hostile-environment claim under §3617, a plaintiff "must show severe and pervasive harassment").  Moreover, the definition of dwelling in the FHAA includes mobile home sites.  See 42 U.S.C. § 3602(b); United States v. Grooms, 348 F.Supp. 1130, 1133 (M.D. Fla. 1972).

In this case, Plaintiff alleges that Defendants failed to provide Plaintiff with a reasonable accommodation and/or intimidated or harassed Plaintiff for exercising rights under the FHAA.   Therefore,

Plaintiff's claim can be construed as a claim of discrimination and/or harassment under the FHAA.  Having determined the nature of Plaintiff's claim, this Court now addresses Defendants' Motion to Dismiss and Plaintiff's Motion for Summary Judgment.

B.    Defendants' Motion to Dismiss

In their Motion to Dismiss, Defendants assert Plaintiff's claims are barred by (1) the Rooker-Feldman doctrine, (2) res judicata, and (3) the doctrine of unclean hands.

### 1.    Plaintiff's Claims are Not Barred by the Rooker-Feldman Doctrine

Defendants assert that because Plaintiff raised his claims of discrimination and harassment in the state court forcible entry and detainer action, the federal court lacks subject matter jurisdiction pursuant to the Rooker-Feldman doctrine.  Defendants essentially assert that Plaintiff is asking this Court to review the state court determination, which this Court would have no jurisdiction to do.

 The Rooker-Feldman doctrine bars federal trial courts from exercising jurisdiction over claims that seek review of state court

judgments.  See <u>Rooker v. Fidelity Trust Co.</u>, 263 U.S. 413, 415-16

(1923); <u>District of Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462,

482-86 (1983).  If applicable, the <u>Rooker-Feldman</u> doctrine would

deprive this Court of jurisdiction.  See <u>Drewicz v. Dachis</u>, 2001 WL

1223524, at *1 (N.D. Ill. 2001).

However, the <u>Rooker-Feldman</u> doctrine applies in only a narrow set

of factual circumstances.  In <u>Exxon Mobil Corp. v. Saudi Basic Industries,</u>

<u>Corp.</u>, 544 U.S. 280, 284 (2005), the Supreme Court held:

> The <u>Rooker-Feldman</u> doctrine, we hold today, is
> confined to cases of the kind from which the
> doctrine acquired its name: cases brought by state-
> court losers complaining of injuries caused by
> state-court judgments <u>rendered</u> <u>before</u> the district
> court proceedings commenced and inviting district
> court review and rejection of those judgments.

<u>Id.</u> (emphasis added.)  In cases where "there is parallel state and federal

litigation, <u>Rooker-Feldman</u> is not triggered simply by the entry of

judgment in state court." <u>Id.</u> at 292 (but also noting that preclusion

doctrines may apply where the state court reaches judgment on the same

or related issue that remains pending in federal court).

Here, the federal proceedings were pending when the state court entered judgment. Entry of judgment in the state court proceedings did not divest this Court of subject-matter jurisdiction. <u>Id.</u> ("neither <u>Rooker</u> nor <u>Feldman</u> supports the notion that properly invoked concurrent jurisdiction vanishes if a state court reaches judgment on the same or related question while the case remains <u>sub judice</u> in a federal court). Therefore, the <u>Rooker-Feldman</u> doctrine does not apply. <u>See</u> <u>TruServ Corp. v. Flegles, Inc.</u>, 419 F.3d 584, 591 (7th Cir. 2005) (holding that the "<u>Rooker-Feldman</u> doctrine is not applicable to this lawsuit because the Kentucky court's judgment was not rendered before the district court proceedings commenced").

### 2. Question of Fact Remains Whether the Claims are Barred by Res Judicata

Defendants also seek to dismiss Plaintiff's Amended Complaint on the basis that the federal claims are barred by <u>res judicata</u>. Specifically, Defendants assert that Plaintiff already raised and tried his claims for discrimination and harassment in state court.

<u>Res judicata</u> is an affirmative defense. Fed.R.Civ.P. 8(c). A

defendant should raise an affirmative defense in a responsive pleading and then file a motion for judgment on the pleadings.  Carr v. Tillery, 591 F.3d 909, 913 (7th Cir. 2010); see Fed.R.Civ.P. 12(c) (a party may move for judgment on the pleadings after the pleadings are closed).

Here, Defendants properly raised res judicata as a defense in their Answer and filed a motion raising res judicata.  Although Defendants did not articulate whether the portion of the motion seeking to dismiss on res judicata grounds was brought pursuant to Federal Rule of Civil Procedure 12(c), this Court construes it as such.  See Carr, 591 F.3d at 913 (Rule 12(c) is the proper basis for raising res judicata); Hernandez ex rel. Gonzalez v. Tapia, 2010 WL 5232942, at *3  (N.D.  Ill. 2010) (noting that when raising an affirmative defense, a defendant should raise the defense in a responsive pleading and then file a motion for judgment on the pleadings).

When reviewing a Rule 12(c) motion for judgment on the pleadings, the court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences in the plaintiff's favor.  Midwest Gas

Services, Inc. v. Indiana Gas Co., Inc., 317 F.3d 703, 709 (7th Cir. 2003).

Rule 12(c) permits judgment based on the pleadings alone, which includes the complaint, the answer, and any written instruments attached as exhibits. Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend, 163 F.3d 449, 452 (7th Cir. 1998). The court may also "take judicial notice of documents that are part of the public record, including pleadings, orders, and transcripts from the prior proceedings." Hernandez ex rel. Gonzalez, 2010 WL 5232942, at *3; see also Baker v. Potter, 175 Fed.Appx. 759, 762 (7th Cir. 2006) (district court properly took judicial notice of the decision by a judge in a previous lawsuit); Smith v. CNA Financial Corp., 2011 WL 1557871, at *4 (N.D. Ill. 2011) ("court may take judicial notice of matters of public record without converting a motion to one for summary judgment").

Defendants assert Plaintiff's claims are barred by res judicata because Plaintiff raised them in the state court proceedings. "A state judgment must be given the same res judicata effect in federal court that it would be given in the court of the rendering state." Torres v.

Rebarchak, 814 F.2d 1219, 1222 (7th Cir. 1987).  Therefore, whether

Plaintiffs claims are barred by res judicata depends on the preclusive

effect of the state-court judgment under Illinois law.  Id.

 "In Illinois, a final judgment on the merits rendered by a court of

competent jurisdiction bars the same parties or their privies from

relitigating issues that were or could have been raised in the prior action."

Id.   Under Illinois law, res judicata applies when there is:  (1) a final

judgment on the merits rendered by a court of competent jurisdiction; (2)

an identity of parties or their privies; and (3) an identity of causes of

actions.  River Park, Inc. v. City of Highland Park, 184 Ill. 2d 290, 302

(1998).

 As noted above, Rule 12(c) permits judgment based on the

pleadings and documents of which the court may take judicial notice.  In

this case, the pleadings and documents relating to the state court

proceedings, of which this Court takes judicial notice, do not

demonstrate whether there is an identity of parties or their privies.

 In the state court case, R and R Real Estate Services LLC brought

suit against Plaintiff.  In the federal court case, Plaintiff brought suit

against Park Ridge Mobile Home Court, LLP and Potts.  Nothing in the

pleadings or state court proceedings indicates whether Defendants herein

are the same party as or in privity with R and R Real Estate Services LLP.

On September 8, 2011, this Court directed Defendants to file

supplemental briefing addressing whether Defendants herein were the

same party as, or in privity with, the plaintiff in the forcible entry and

detainer action, R and R Real Estate Services, LLC.  Plaintiff was also

given an opportunity to file a response, which he did.  Both parties

submitted documents purporting to support their respective positions on

the issue.

Because the parties submitted extrinsic evidence, this Court must

either convert the Motion to Dismiss into a motion for summary

judgment or exclude the documents attached.  <u>See</u> <u>Hung Nam Tran v.</u>

<u>Kriz</u>, 2008 WL 4889325, at *1 (E.D. Wis. 2008); <u>see</u> <u>also</u>, <u>e.g.</u> <u>Omega</u>

<u>Healthcare Investors, Inc. v. Res-Care, Inc.</u>, 475 F.3d 853, 856 n. 3 (7th

Cir. 2007).  As noted above, the pleadings and documents of which the

Court may take judicial notice do not demonstrate whether there is an identify of parties or their privies. The Court declines to convert Defendants' motion into a motion for summary judgment because even considering the affidavit Defendants provided, the record is not sufficient to grant the motion for judgment as a matter of law. Defendants provided no argument on the issue of privity, and the Affidavit attached does not adequately explain the relationship between R and R Real Estate Services, LLP and Defendants. See, e.g., Hung Nam, 2008 WL 4889325, at *2. Defendants are invited to file a properly supported motion for summary judgment at a later date. See, e.g., CNH America, LLC v. Equipment Direct-USA, LLC, 2010 WL 1790364, at *6 (C.D. Ill. 2010) (declining to convert the motion to dismiss to a motion for summary judgment but inviting the defendants to file a motion for summary judgment at a later date), Report and Recommendation adopted by 2010 WL 1790363 (C.D. Ill. 2010).

3.  **Defendants are Not Entitled to Dismissal on Grounds of Unclean Hands**

Defendants last seek to dismiss Plaintiff's Amended Complaint on

the ground that Plaintiff knew he had to have his seeing eye dog pre-approved because he had his other two dogs pre-approved. According to Defendants, "[t]his shows that the Plaintiff was not doing equity and therefore the court should deny his equitable claim for relief and dismiss the case with prejudice."

The Court declines to dismiss Plaintiff's Amended Complaint on this ground. First, "[u]nclean hands bars equitable relief if such relief would result in a wrongful gain for the plaintiff." Circle Group Holdings, Inc. v. Akhamzadeh, 2006 WL 2548164, at *9 (N.D. Ill. 2006). Plaintiff here seeks money damages, and, therefore, the defense of unclean hands is inapplicable. See, e.g., Chow v. Aegis Mortgage Corp., 286 F.Supp.2d 956, 964 (N.D. Ill. 2003) (applying Illinois law).

Second, the doctrine of unclean hands is an affirmative defense. Circle Group, 2006 WL 2548164, at *8. A claim should not be dismissed based on an affirmative defense at the motion to dismiss stage unless "the face of the complaint shows beyond all doubt that an affirmative defense is dispositive." Id. Here, the face of the Amended

Complaint does not show beyond all doubt that the purported affirmative defense is dispositive.

Therefore, for all these reasons, Defendants' Motion to Dismiss will be denied.

C.     Plaintiff's Motion for Summary Judgment

Plaintiff filed a Motion for Summary Judgment. The only "evidence" presented by Plaintiff is a letter from Dr. Fred Rauscher stating that Plaintiff "has a seeing eye dog, medically necessary" (emphasis in original.)

As the movant, Plaintiff bears the burden of showing the absence of any genuine issue of material fact and that he is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(a); Kolpak v. Bel, 619 F.Supp. 359, 363 (N.D. Ill. 1985); Moore v. Illinois State Police, 249 F.Supp.2d 999, 1003 (N.D. Ill. 2003) ("[t]he party moving for summary judgment has the initial burden of submitting affidavits and other evidentiary material which show the absence of a genuine issue of material fact"), aff'd 90 Fed.Appx. 964 (7th Cir. 2004). Plaintiff has failed to meet his burden

here, and his motion will be denied.

## IV.  CONCLUSION

For the reasons stated, Defendants' Motion to Dismiss (d/e 16) and

Plaintiff's Motion for Summary Judgment (d/e 15) are DENIED.

ENTER: September 23, 2011

FOR THE COURT:

_____s/Sue E. Myerscough_____
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE
